UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JONATHAN MUSIC,

                            Petitioner,

            v.

                                                    **DECISION AND ORDER**
                                                    99-CR-149S

UNITED STATES OF AMERICA,

                            Respondent.


        1.      On August 20, 2004, Petitioner Jonathan Music, acting *pro se*, filed a motion

requesting specific performance of alleged Government promises.[1]  Petitioner contends

that after his arrest, in exchange for certain promises, he agreed to cooperate with the

Government by acting as an undercover operative and providing testimony against others.

Specifically, Petitioner alleges that two agents of the Federal Bureau of Investigation

("FBI") and an Assistant United States Attorney ("AUSA") promised him that the

Government would grant him immunity from prosecution, place him in the Federal Witness

Protection Program, and provide him with a job, a new identity and starting out money.

(Pet.'s Mot., p. 3).  Petitioner requests an evidentiary hearing, or in the alternative, specific

performance of the Government's alleged promises.  (Pet.'s Mot., p. 17).

        2.      The following facts are undisputed.  On September 20, 1999, FBI agents

arrested Petitioner after he attempted to sell cocaine to an undercover FBI agent.

---

[1]      In support of his request, Petitioner filed two memoranda, one titled "Motion for Specific
Performance" and another titled "Opposition to the Government's Response to Petitioner's Motion."  In
opposition, the Government filed a memorandum titled "Response to Petitioner's Motion for Specific
Performance" with attached exhibits, an Affidavit by Assistant United States Attorney Anthony M. Bruce,
an Affidavit by Special Agent Andrew J. Goralski, and an amended Affidavit by Assistant United States
Attorney Anthony M. Bruce.

Petitioner waived his rights and provided the arresting agents a written statement describing his participation in and knowledge of narcotics distribution activities. Subsequent to giving this statement, Petitioner agreed to cooperate with the Government by testifying and working in an undercover capacity. Thereafter, this Court appointed an attorney for Petitioner and released him from custody on bond.

On September 28, 1999, a meeting occurred at a Sheraton Hotel between Petitioner, his attorney, AUSA Anthony M. Bruce, and two FBI agents. At this meeting, referred to as a "debriefing" by the Government, Petitioner provided additional information regarding narcotics trafficking and other criminal activities. AUSA Bruce informed Petitioner's attorney that nothing that Petitioner said during the meeting would be used against him.

On January 6, 2000, Petitioner entered into a Plea Agreement with the Government. Pursuant to this Agreement, Petitioner plead guilty to Count I of an Indictment charging him with conspiring to possess cocaine hydrochloride with intent to distribute and conspiring to distribute cocaine hydrochloride in violation of Title 21, United States Code, Section 846 ("conspiracy count"). In addition, Petitioner waived indictment and pled guilty to a one-count Information charging him with theft and conversion of government property with a value in excess of $1,000 in violation of Title 18, United States Code, Section 641 ("conversion count"). The Plea Agreement set forth the parties' understanding that Petitioner's sentencing range would be a term of incarceration between 188 and 235 months. Further, the Plea Agreement stated that Petitioner would cooperate with the Government by providing information regarding the unlawful possession, manufacture, or distribution of controlled substances. If Petitioner fully complied with the Plea Agreement

and provided substantial assistance to the Government in investigating and prosecuting others for criminal offenses, the Government would, at its discretion, move for a downward departure at sentencing.

On November 20, 2000, this Court sentenced Petitioner to a 188 month term of imprisonment on the conspiracy count and a 120 month term of imprisonment on the conversion count.  Both sentences were ordered to run concurrently.  On November 14, 2001, the Government filed a motion to reduce the Petitioner's sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.  On January 28, 2002, this Court granted the Government's Motion for Downward Departure and re-sentenced Petitioner to a 108 month term of imprisonment on each count to run concurrently.  This Court directed the Clerk of Court to seal all pleadings related to Petitioner's re-sentencing.

3.      Petitioner first alleges that when he provided a written statement immediately following his arrest, two FBI agents advised him that he would be granted immunity, placed in the Witness Protection Program, and thereafter provided with a new identity, a job and starting out money.   (Pet. Mot., p. 3).   Petitioner further alleges that AUSA Bruce "reiterated and endorsed" these promises at the September 28, 1999 debriefing.  (Pet.'s Mot., p. 3).

4.      The Government contends that neither the FBI agents nor the AUSA promised Petitioner that he would be enrolled in the Witness Protection Program in exchange for his cooperation.  The Government alleges that Petitioner inquired about  his eligibility for the Witness Protection Program at the September 28, 1999 debriefing.  In response, AUSA Bruce explicitly stated that he would not sponsor Petitioner for the program.  (Bruce Aff., p. 4).  The Government further contends that Petitioner was

3

promised "use immunity" for information he disclosed during the September 28, 1999 debriefing.  However, Petitioner was offered no immunity with respect to the prior written statement that he provided immediately following his arrest on September 20, 1999.  (<u>Govt. Resp.</u>, p. 5).  At no time, the Government insists, did any Government representative promise Petitioner "transactional immunity," that is, immunity from prosecution altogether. (<u>Govt. Resp.</u>, p. 5).

5.    Plea bargains and cooperation agreements between a defendant and the government are interpreted according to principles of contract law.  <u>United States v. Rexach</u>, 896 F.2d 710, 713 (2d Cir. 1990); <u>United States v. Alexander</u>, 869 F.2d 91, 95 (2d Cir. 1989); <u>see</u> <u>also</u> <u>Santobello v. New York</u>, 404 U.S. 257, 262-63, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971).  Accordingly, the use of parol evidence to supplement the terms of an unambiguous written plea agreement is ordinarily frowned upon, especially where that agreement disclaims the existence of additional promises. <u>See</u>, <u>e.g.</u>, <u>United States v. Ingram</u>, 979 F.2d 1179, 1184 (7th Cir. 1992), *cert. denied*, 507 U.S. 997, 113 S. Ct. 1616, 123 L. Ed. 2d 176 (1993); <u>United States v. Gamble</u>, 917 F.2d 1280, 1282 (10th Cir. 1990); <u>Hartman v. Blankenship</u>, 825 F.2d 26, 29 (4th Cir. 1987); <u>see</u> <u>also</u> <u>United States v. Hogan</u>, 862 F.2d 386, 388 (1st Cir. 1988) (The fact that a plea agreement disclaims existence of other promises "militates strongly" against defendant's assertion to contrary).

Moreover, a defendant is ordinarily bound by his or her representations in court disclaiming the existence of additional promises. <u>See</u>, <u>e.g.</u>, <u>Baker v. United States</u>, 781 F.2d 85, 90 (6th Cir. 1986) ("Where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement

4

consists of the terms revealed in open court"), *cert. denied*, 479 U.S. 1017, 107 S. Ct. 667, 93 L. Ed. 2d 719 (1986); Barnes v. United States, 579 F.2d 364, 366 (5th Cir. 1978) ("Where, from the transcript, the plea-taking procedures are clear and regular on their face, a petitioner asserting the existence of a bargain outside the record and contrary to his own statements under oath bears a heavy burden."); see also United States v. Pellerito, 878 F.2d 1535, 1539 (1st Cir. 1989) (A defendant cannot "turn his back on his own representations to the court merely because it would suit his convenience to do so").

6.     In this case, Petitioner has failed to present any evidence tending to show that he was promised immunity from prosecution, admittance into the Witness Protection Program, a new identity, a job or starting out money.  Petitioner's claims rest solely on his own self-serving allegations that promises were made to him by the arresting FBI agents and the prosecuting AUSA.  Moreover, his allegations contradict the unambiguous terms of the Plea Agreement and Petitioner's sworn statements before this Court.  Petitioner's written Plea Agreement contains no reference to the Witness Protection Program or the Government's alleged promises.  The Plea Agreement explicitly states "[n]o promises or representations have been made other than what is contained in this agreement."  (Plea Agree., p. 18).  Furthermore, at Petitioner's Rule 11 hearing, this Court queried Petitioner about the Plea Agreement as follows.

THE COURT:        Is this the total agreement as you view it?

[PETITIONER]:     Yes, Sir, it is.

THE COURT:        Any promises made to you that are not reduced to writing and that you are relying upon in connection with this proceeding?

[PETITIONER]:     No, Sir.

| | |
|---|---|
| THE COURT: | You look like there may be something. |
| [PETITIONER]: | No, Sir, there isn't. |
| THE COURT: | Okay.   Any reason why I should not accept this plea agreement? |
| [PETITIONER]: | No, your honor, there's no reason. |

(Tr. Plea Colloquy, p. 35).

This Court finds that Petitioner's Plea Agreement unambiguously sets forth the Government's obligations and clearly disclaims the existence of any additional promises. As such, it is unnecessary to conduct an evidentiary hearing to ascertain the terms of the parties' agreement.  Ingram, 979 F.2d at 1184.  Moreover, this Court finds that Petitioner's assertion that a bargain existed outside of the record is belied by his own sworn statements in open court to the contrary.  Accordingly, Petitioner's request for specific performance of the Government's alleged promises will be denied.

IT HEREBY IS ORDERED that Petitioner's Motion for Specific Performance (Docket No. 140) is DENIED.


SO ORDERED.


Dated:        June 13, 2005
              Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge